IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RONALD LEMA KUPSKY,

                Plaintiff,                      OPINION AND ORDER

v.

                                                        23-cv-704-wmc

JEREMY STANIEC and
KEITH IMMERFALL,

                Defendants,

       Plaintiff Ronald Lema Kupsky is a state prisoner representing himself. The court previously granted leave to proceed with Eighth Amendment claims against defendants Jeremy Staniec and Keith Immerfall, both correctional officers at Waupun Correctional Institution. Specifically, plaintiff contends that defendants forced him to sit naked in a cold cell for three hours on October 13, 2017. Before the court are plaintiff's motions for discovery sanctions (dkt. #32) and summary judgment (dkt. #33), as well as defendants' cross-motion for summary judgment (dkt. #37). For the reasons explained below, the court will deny plaintiff's motions for sanctions and summary judgment, but grant defendants' summary judgment motion.

BACKGROUND FACTS

       At all times relevant to this lawsuit, plaintiff Ronald Kupsky was an inmate in the custody of the Wisconsin Department of Corrections ("DOC") and housed at the Waupun Correctional Institution ("WCI"). Defendants Keith Immerfall and Jeremy Staniec are Lieutenants and employed by the DOC at WCI.

       Around 8:15pm on October 13, 2017, another WCI Lieutenant who is not a defendant named Burns was interviewing Kupsky, when he became combative, including injuring and

spitting on Burns. Lieutenant Immerfall was then contacted to help manage the situation. When Immerfall arrived, Kupsky was already in handcuffs. At this point, Immerfall informed Kupsky that because of his belligerent behavior he would be moved to WCI's restricted housing unit ("RHU") and placed on "control status," meaning he would be limited in what property he was allowed to have and must "earn back" property. While being escorted to the RHU, Kupsky continued to be disruptive, including threatening that once he was out of the RHU, he would cut Immerfall's throat and "finish what [he] started."

After arriving in the RHU, staff began documenting their ongoing encounter with Kupsky on video. For example, the video shows staff cutting off Kupsky's clothes and conducting a staff assisted strip search, which produced no contraband. During the search, Kupsky continued to direct vulgar language at WCI staff. Once the search was completed, staff covered Kupsky from the waist down with a so-called "privacy towel," secured a tether to his wrists, and escorted him to RHU cell A-103. At roughly 9:00 p.m., Kupsky was placed into his cell where staff removed the privacy towel and, after closing the cell door, removed his handcuffs through the door slot. As his handcuffs were removed, Kupsky attempted to grab the hands of correctional officer Umentum, who is also not a named defendant.

Once Kupsky was secure in cell A-103, staff reported to the RHU Sergeant area, at which time, Immerfall addressed the camera, giving a brief synopsis of the events leading to Kupsky's placement on control status. Specifically, he described Kupsky's initial altercation with Burns and subsequent threats to other WCI staff, along with a comment that he would use property given to him to cover up his cell window and camera, so that staff would have to enter his cell. Based on his comments and actions, Immerfall deemed it prudent *not* to provide Kupsky any property until he de-escalated and calmed down.

2

Lieutenant Staniec started his shift at WCI at 10:00pm and was required to check on inmates in control status twice during his shift. He first checked on Kupsky at 11:47pm, providing him eight sheets of tissue paper for the bathroom and a so-called "privacy kilt" that allowed him to cover himself in his cell.

## OPINION

### I. Motion for Sanctions

The court begins by addressing plaintiff's motion for discovery sanctions. Specifically, under Federal Rule of Civil Procedure 37(e)(2)(C), plaintiff asks the court to enter default judgment because defendants' discovery productions did not include a three-hour video of plaintiff being left naked in his cell. In relevant part, Rule 37(e)(2)(C) states that:

> (e) If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> ***
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Here, plaintiff has neither shown that defendants failed to take reasonable steps to preserve video footage, nor that they acted with intent to deprive him of the video's use. First,

unless a video is actively preserved, it is only stored on WCI's software for 180 days. WCI does not store videos unless specifically requested or required to be stored. Because WCI does not automatically preserve video relevant to a conduct report, that video will not be preserved unless a specific request is received. Because plaintiff did *not* request timely that WCI preserve this video footage, therefore, he cannot show that defendants failed to take reasonable steps to preserve it.

Nevertheless, plaintiff argues that by virtue of his having filed an inmate complaint about his treatment in RHU, defendants should have been on notice that future litigation would be possible, requiring preservation under Rule 37(e). However, WCI cannot be expected to save every video related to every inmate complaint that gets filed, and plaintiff does not argue that having 180 days to request preservation is unreasonable, nor could he.

Indeed, the *only* evidence regarding the handling of the video is that *WCI followed its guidelines*. Specifically, because there was not a request to preserve video from plaintiff's cell on the night in question, it was not preserved. This alone does not reflect an intent to deprive plaintiff of information in the video. Additionally, the video information plaintiff now hopes to use is either undisputed or may be obtained through other means. Notably, defendants do *not* dispute that plaintiff was naked in his cell for just under three hours, and information about what was visible to passing inmates or said as plaintiff entered the cell can be the subject of testimony by plaintiff and others, as well as observable on the video documentation that defendants did produce. Accordingly, plaintiff's motion for sanctions must be denied.

**II. Cross Motions for Summary Judgment**

Plaintiff claims all sound under the Eighth Amendment, contending that defendants

Immerfall and Staniec violated his rights against cruel and unusual punishment by leaving him naked in his cell for almost three hours. In his motion, plaintiff argues summary judgment should be entered in his favor based on the fact that defendants knew he was left in a cold cell without clothes for hours and were indifferent to the harms of being exposed to the cold and being viewed by other, passing inmates. Alternatively, defendants cross-move for summary judgment arguing that: (1) plaintiff was not denied the minimal civilized measures of life's necessities; (2) defendants did not act with deliberate indifference; and (3) defendants are entitled to qualified immunity. Because the court concludes that plaintiff's claims fail on the merits, it need not address defendant's qualified immunity defense.

Courts apply the usual Rule 56 standard when reviewing cross-motions for summary judgment, but must be careful to draw reasonable inferences in the correct direction when evaluating cross-motions. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating summary-judgment motions, therefore, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir.2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the

5

initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir.2010).

As for the protections afforded inmates under the Eighth Amendment, the Constitution allows restrictive and even harsh conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). What the Constitution does *not* allow is a deprivation "of the minimal civilized measure of life's necessities." *Id*. The Eighth Amendment also includes protections for "dignity, civilized standards, humanity, and decency against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal quotes and citations omitted). Additionally, "conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). For example, a prison official who denies an inmate an identifiable human need "violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

To succeed on his Eighth Amendment claim, therefore, plaintiff must advance evidence from which a reasonable jury could find both that: (1) he suffered a sufficiently serious deprivation; and (2) defendants acted with "deliberate indifference" to his conditions of confinement. *Farmer*, 511 U.S at 837. Moreover, because warmth is an identifiable human need in particular, "prisoners have a right to protection from extreme cold." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). Still, whether an inmate's exposure to cold rises to a constitutional level depends on: "the severity of the cold; its duration; whether the prisoner has

6

alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id*. at 644. For example the Seventh Circuit has found that an inmate's deprivation of warmth rose to a constitutional violation after being exposed to below freezing temperatures for 24 hours, *Smith v. Kind*, 140 F.4th 359, 371 (7th Cir. 2025), or exposed to temperatures in the mid-50s for two months, *Lewis v. Lane*, 816 F.2d 1165, 1166, 1171 (7th Cir. 1987).

Here, plaintiff was naked in his cell for almost three hours on a night where the temperature reached a low of 56 degrees Fahrenheit, causing him to suffer cold needlessly. However, to prevail on an Eighth Amendment claim, the harm must also be objectively serious, and the *undisputed* opinion of defendants' expert, Dr. Laura Sukowaty, is these conditions would not cause hypothermia in a few hours, nor should being left naked a few hours in a cell cause any long-term physical harm or effects. Accordingly, no reasonable jury could conclude that plaintiff faced an *objectively* serious risk of serious harm, however plaintiff may have personally felt.

Further, plaintiff's attempt to differentiate this case based on a "dignity factor" is unavailing. There is no question that being naked in prison "may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). In particular, the Eighth Amendment only prohibits "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In this case, defendants' decision to deny plaintiff property for a limited amount of time was penologically justified, in light of plaintiff having engaged in combative behaviors

7

and threatened staff.  Specifically, by limiting plaintiff's access to property until he had an opportunity to calm down, defendants reduced plaintiff's opportunity to cause further harm to himself or staff.  Finally, plaintiff here was *not* left naked when being transported through the prison; this occurred only after he was in his cell and only visible to other inmates and staff as they walked by, indicating that defendants sought to minimize plaintiff's psychological harm.

Plaintiff's reliance on *Estelle v. Gamble*, 429 U.S. 97 (1976), *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991), and *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006), is also unpersuasive.  First, *Estelle* is the seminal case discussing Eighth Amendment claims for failing to provide adequate medical care, 429 U.S. at 104, and does not discuss an inmate's exposure to the cold.  Second, in *Chandler*, an out-of-circuit case, the plaintiff's contended deprivations are well beyond the conditions faced by plaintiff here.  Specifically, the plaintiff in *Chandler* went days in his cold cell and also dealt with filth on the cell's floor and walls, no toilet paper for three days, no running water for two days, insufficient soap, toothbrush, toothpaste, and linen, and the earlier occupancy of the cell by an inmate afflicted with the HIV virus.  926 F.2d at 1063.  Finally, in *Gillis*, an in-circuit case, the plaintiff's deprivation also faced conditions far beyond plaintiff, including being left naked for five days, having to sleep on cold concrete, having to walk 14 hours a day to stay warm, and being denied soap.  468 F.3d at 490.

The conditions faced by plaintiff for three hours were certainly unpleasant. However, to invoke the Constitution's protection, those conditions must be objectively serious, and no reasonable jury could conclude that plaintiff's conditions of confinement were objectively serious enough to establish a constitutional violation.  Even if plaintiff could convince a reasonable jury that his conditions were sufficiently serious to invoke Eighth Amendment protection, he must also satisfy a jury that defendants' decision to leave plaintiff in his cell

8

without property for three hours was a result of deliberate indifference. The test for deliberate indifference is a subjective one, requiring the court to determine if: (1) a reasonable jury could conclude that the two defendants had actual knowledge that plaintiff faced "a substantial risk of serious harm" to his health or safety; and if so, (2) what steps they took to respond to that risk. *Farmer*, 511 U.S. at 847.

Beginning with defendant Immerfall, there is no indication that his actions were taken with any indifference to plaintiff's cold conditions. Instead, Immerfall's decision not to provide plaintiff with property appeared motivated by plaintiff's earlier threats and behaviors. Specifically, plaintiff's threat to use property to obstruct view of his cell forcing staff to enter and potentially causing more harm to himself and staff. Additionally, the prohibition on property was only intended to last until the situation de-escalated. Accordingly, no reasonable jury could conclude that Immerfall was deliberately indifferent.

The analysis that defendant Staniec was not deliberately indifferent is even more straightforward. When Staniec checked on plaintiff, he took action to accommodate plaintiff, providing a privacy kilt and tissue paper. Accordingly, no reasonable jury could conclude that Staniec's response to plaintiff's concerns was deliberately indifferent to a serious harm. As a result, defendants' motion for summary judgment will be granted and plaintiff's will be denied.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for sanctions (dkt. #32) is DENIED.

2) Plaintiff's motion for summary judgment (dkt. #33) is DENIED.

3) Defendants' motion for summary judgment (dkt. #37) is GRANTED.

4) The Clerk of Court is directed to enter judgment consistent with this opinion and close this case.

Entered this 4th day of March, 2026.

                                BY THE COURT:

                                /s/

                                _____
                                WILLIAM M. CONLEY
                                District Judge